# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ADVANCE BRANDS, LLC., <br><br> Plaintiff, <br><br> vs. <br><br> ALKAR-RAPIDPAK, INC., <br><br> Defendant and <br> Third-Party Plaintiff, <br><br> vs. <br><br> GLEESON CONSTRUCTORS & ENGINEERS, L.L.C. and PLAINS BOILER SERVICE, INC., <br><br> Third-Party Defendants. | No. C08-4057-DEO <br><br> **ORDER ON MOTION TO QUASH SUBPOENA** |

_____

This case arises out of an explosion and fire that occurred on September 17, 2007, at the plaintiff's food processing plant in Orange City, Iowa. The plaintiff Adavnce Brands, LLC ("Advance") alleges that the fire was caused by a defectively designed and manufactured industrial oven provided by the defendant Alkar-Rapidpak, Inc. ("Alkar"). One of the crucial questions in the case is whether the plaintiff failed to mitigate its damages when it decided to replace the oven rather than to repair it.

This matter is before the court on Advance's motion, Doc. No. 60, to quash a subpoena issued by Alkar to Crispin Hales, an engineering consultant. In the subpoena, Alkar seeks production of "[a]ny and all records in [Hales's] possession referring or relating to the Oven from September 1, 2007 through present," and "[a]ny and all documents referring or relating to the Incident." Doc. No. 60-2, p. 7. In its motion to quash, Advance claims the requested records and documents are protected under Federal

Rule of Civil Procedure 26(b)(4)(B),[1] and by the attorney-client and work-product privileges. Doc. No. 60, p. 2.

Immediately after the fire, Advance's insurer hired a lawyer to investigate the incident "with an eye toward litigation to recover damages from any tortfeasor responsible for the explosion and fire." Doc. No. 60-1, p. 1. The lawyer retained Crispin Hales to serve as a "litigation consultant" for the lawyer and his clients. *Id*.

After the fire, Advance was required to decide whether to repair or replace the damaged oven. Before making this decision, representatives of Advance consulted with Hales, and Hales raised several potential problems with repairing the oven. On October 22, 2007, Advance's president, Tom Harpenau, wrote the following letter to Alkar:

> We are interested in exploring options to repair the oven damaged by the explosion and fire on 9/16/07. We have received your proposal to both repair and replace sections according to the original oven design. In order to make our operation even safer, we would like you to consider incorporating additional safety features or design modifications to the oven. The ideas and suggestions that we have generated to date include the following:
>
> 1. Relocate the Bellows (expansion joints) and piping outside of the oven box.
> 2. Provide adequate support to piping and expansion joints.
> 3. Obtain ASME certification and testing to appropriate rating on all modifications.
> 4. Install relief valve between return isolation valve and return header.

---

[1] "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B). The rule provides for an exception "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(B)(ii).

>    5.   Replace all expansion joints in all oven zones.
>    6.   Replace coils in zone two and test all other zones.
>
>    We certainly are not experts at oven design. We would welcome any other design considerations that you might have to add to the safety features we have identified. Our request is for a proposal that includes time and cost that addresses these considerations. We do not want to prescribe how the oven should be designed. If there are better ways of accomplishing our ideas, please provide them.
>
>    Our goal is to get back up and running as quickly as possible. We appreciate your cooperation to do so in a manner that helps ensure that we don't experience an event like this in the future.

Doc. No. 64-4, p. 2. There is no dispute that the "ideas and suggestions" referred to in this letter all were generated by Hales in his discussions with Harpenau and representatives of Advance, and not by any employee or other representative of Advance.

Alkar argues the case of *Wells Dairy, Inc. v. American Industrial Refrigeration, Inc.* 690 N.W.2d 38 (Iowa 2004), is controlling. *Wells* arose out of an explosion that occurred at an ice cream plant in LeMars, Iowa. After the fire, Wells officials hired two experts to investigate the circumstances surrounding the explosion, and to prepare a report concerning Wells's potential responsibility for the explosion. The other parties to the lawsuit learned of the report and sought its production. The Iowa Supreme Court held that "except where a document would have been generated in the normal course of business even if no litigation was anticipated, the work product doctrine can reach documents prepared 'because of litigation' even if they were prepared in connection with a business transaction or also served a business purpose." *Wells*, 690 N.W.2d at 47. The court further clarified its holding by explaining that "[i]f documents would have been created in essentially similar form irrespective of the litigation . . . it cannot fairly be said that they were created because of actual or impending litigation." *Id.*, 690 N.W.2d at 48 (internal quotation marks, brackets, and citation omitted).

Advance argues Hales was hired by its insurance counsel for the sole purpose of evaluating the incident and determining whether or not viable legal claims existed. Advance cites *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065 (N.D. Cal. 2002), where the court examined the test for disclosure of documents created in anticipation of litigation and held, "An attorney's (or a party's) reasoning or research (factual or legal) about anticipated litigation should not be discoverable simply because the work also had to be undertaken to facilitate or consider a business transaction." *Id.*, 241 F. Supp. 2d at 1982 (discussing *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998)). Therefore, Advance asserts, "[t]he fact that Mr. Harpenau used some of the information learned from Hales in his capacity as litigation consultant to also facilitate a business decision of not repairing the defective Alkar oven does not nullify the protected work product status of Hales'[s] file." Doc. No. 68, p. 4.

Advance also argues that Harpenau's reliance on some of Hales's information in deciding to replace, rather than repair, the oven does not nullify the work product character of Hales's file, and furthermore is irrelevant to the issue of mitigation of damages. Advance asserts the jury will decide the issue of mitigation of damages on an objective basis by considering evidence on the oven's safety, whether it was capable of being repaired, and the costs of replacement versus those of repair. Advance will produce its disclosed testifying expert witness on this issue, and his report has been produced to Alkar. *Id.*, pp. 4-5. Advance concludes that because "the jury will hear expert testimony that the Alkar oven was defective and unreasonably dangerous [from its testifying expert witness,] . . . there is absolutely no valid reason to strip [Advance] of the work product protection it and every litigant as well as the courts hold inviolate." *Id.*, p. 6.

Alkar disagrees, arguing Advance has failed to meet its burden to show that Hales's file is work product; Alkar can only accomplish meaningful cross-examination of Harpenau by examining Hales's file; and Federal Rule of Civil Procedure 26(A)(2) requires

4

disclosure of Hales's file because Harpenau relied on Hales's opinions, and Harpenau has been designated as Advance's testifying "expert." Doc. No. 70.

The last of these arguments is the most problematic for Advance. Advance has designated Harpenau as a witness under Rule 26(a)(2)(A)[2], to give expert testimony on the following topics:

> Mr. Harpenau will testify that he considered and analyzed the safety concerns being raised by the investigators after the explosion with respect to the Alkar oven. Moreover, he solicited a bid from Alkar and asked Alkar to address these safety concerns and Alkar refused to acknowledge the safety concerns raised by Mr. Harpenau. Based upon the refusal of Alkar to acknowledge these safety concerns and Mr. Harpenau's concern for the safety of Advance[] Brands' employees, Mr. Harpenau made the decision to pursue other options.

Doc. No. 70-1, p. 4. As noted earlier, there is no dispute that the "investigator" who raised the safety concerns that were passed along by Harpenau in his letter to Alkar all were generated by Hales, and not by any employee or other representative of Advance.

In addition to the fact that Harpenau has been designated as an expert witness, Alkar also argues that any claim of privilege was waived when Harpenau was allowed to testify in his deposition, without objection, about his discussions with Hales and the information Hales provided to him. Alkar cites *Johnson v. Gmeinder*, 191 F.R.D. 638 (D. Kan. 2000) for the proposition that "'any type of privileged material, including materials or documents prepared by a non-testifying expert, lose their privileged status when disclosed to, and considered by, a testifying expert.'" *Id.*, p. 3-4 (quoting *Gmeinder*, 191 F.R.D. at 647, and citing, *inter alia, Oklahoma v. Tyson Foods, Inc.*, slip op., 2009 WL 1578937 (N.D.

---

[2] "In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Subsection (a)(2)(B) goes on to require a written report from those experts "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).

Okla. June 2, 2009) ("The rationale for this 'waiver' of privilege or protection is that any disclosure to a testifying expert in connection with his testimony assumes that privileged or protected materials will be made public.")).

Alkar also notes that during oral argument on Advance's motion to quash, Advance repeatedly stated Hales's opinion were relevant to Harpenau's "state of mind" in deciding not to repair the Alkar oven. Alkar argues this makes Hales's file at least relevant and discoverable, if not necessarily admissible at trial. Doc. No. 70, pp. 5-6.

The court has considered the parties' arguments and relevant authorities, and again **reserves** making a final ruling on Advance's motion. While it appears that at least portions of Hales's file may be discoverable by Alkar, it also is likely there are portions of Hales's file that relate solely to litigation advice or strategy, and which clearly would not be discoverable.

Therefore, the court orders Advance to produce the entirety of Hales's file, in unredacted form, to the court for *in camera* review, **by August 9, 2010**. The file either must be Bates-stamped, or the pages otherwise numbered and indexed to allow the court to make reference easily to any specific page. The court will review the file and then issue a final ruling on what portions of the file, if any, must be disclosed to Alkar. The court will not disclose the documents itself, but will direct Advance to make any required disclosure within a time limit that will allow the parties to file any appeal they may deem advisable to the undersigned's final ruling on the motion to quash.

**IT IS SO ORDERED.**

**DATED** this 28th day of July, 2010.

_____
PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT