**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

ADVANCE BRANDS, LLC,

    Plaintiff,

vs.

ALKAR-RAPIDPAK, INC.,

    Defendant and Third-Party Plaintiff,

vs.

GLEESON CONSTRUCTORS & ENGINEERS, LLC and PLAINS BOILER SERVICE, INC.,

    Third-Party Defendants.

No. 08-CV-4057-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*    *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
     *A.*    *Alkar's Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
         *1.*    *Legal background* . . . . . . . . . . . . . . . . . . . . . . . . . *4*
         *2.*    *Eckhardt's qualifications* . . . . . . . . . . . . . . . . . . . . . *5*
         *3.*    *Alternative causes* . . . . . . . . . . . . . . . . . . . . . . . . *7*
         *4.*    *Methodology* . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
         *5.*    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
     *B.*    *Advance Brands's Motion* . . . . . . . . . . . . . . . . . . . . . . . . *10*
         *1.*    *Advance Brands's operation of the Alkar oven* . . . . . . . . . *10*
         *2.*    *Advance Brands's insurance* . . . . . . . . . . . . . . . . . . *12*
         *3.*    *Advance Brands's other equipment* . . . . . . . . . . . . . . *13*
         *4.*    *Jack Auflick's testimony* . . . . . . . . . . . . . . . . . . . . *14*

| | | |
|---|---|---|
| **5.** | ***R. Dean Harris, John Holecek and Sid Bhatt's*** | |
| | ***testimony*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ***17*** |
| | 6. *Timothy Kobernat's testimony* . . . . . . . . . . . . . . . . . . . . . . . | *17* |
| **IV.** | **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **18** |

## *I. INTRODUCTION*

The matters before the court are: (1) Plaintiff Advance Brands, LLC's ("Advance Brands") Motion in Limine ("Advance Brands's Motion") (docket no. 120); and (2) Defendant and Third-Party Plaintiff Alkar-Rapidpak, Inc.'s ("Alkar") Motion in Limine ("Alkar's Motion") (docket no. 122).[1]

## *II. RELEVANT PROCEDURAL HISTORY*

On May 10, 2011, the court entered an Order ("Summary Judgment Order") (docket no. 128) granting in part and denying in part Alkar's Motion for Summary Judgment (docket no. 102). Specifically, the court granted Alkar's Motion for Summary Judgment on Advance Brands's manufacturing defect claim, but denied the Motion for Summary Judgment on Advance Brands's remaining claims. A jury trial is currently scheduled for the week beginning June 13, 2011.

On May 5, 2011, the parties filed the Motions. On May 9, 2011, Advance Brands filed a Motion to Strike (docket no. 124) Alkar's Motion for violating Local Rule 7(h), which limits the length of a brief to twenty pages. On May 10, 2011, the court entered an Order (docket no. 129) granting the Motion to Strike in part, and noted that it would consider only the first twenty pages of Alkar's brief.

On May 12, 2011, Advance Brands filed a Resistance (docket no. 134) to Alkar's Motion. On that same date, Alkar filed a Resistance (docket no. 137) to Advance Brands's Motion. Also on May 12, 2011, Third-Party Defendant Gleeson Constructors &

---

[1] The court refers to the parties' Motions in Limine collectively as "the Motions."

Engineers, LLC ("Gleeson") filed a Resistance (docket no. 130) to Advance Brands's Motion and Third-Party Defendant Plains Boiler Service, Inc. ("Plains Boiler") filed a Resistance (docket no. 131) to Advance Brands's Motion. On May 17, 2011. Alkar filed a Reply ("Alkar Reply") (docket no. 145) to Advance Brands's Resistance to Alkar's Motion.

On May 19, 2011, the court held a Final Pretrial Conference ("Hearing"). Jeff Wright, Robert Cockerham, Matthew Lefler and Samuel Vincent III appeared for Advance Brands. John Mayne, Phillip Shawn Wood and Justin Beyer appeared for Alkar. Daniel Shuck appeared for Gleeson. Michael Frey appeared for Plains Boiler. At the Hearing, the parties addressed the Motions, and the court reserved ruling pending the instant order.

### III. ANALYSIS

The court first addresses Alkar's Motion and then considers Advance Brands's Motion.

#### A. *Alkar's Motion*[2]

Alkar asks the court to exclude the opinions of Advance Brands's engineering expert, Bartley Eckhardt. Alkar maintains that the court should exclude Eckhardt's conclusions under *Daubert*[3] and Federal Rule of Evidence 407 because (1) "Eckhardt lacks sufficient skill, knowledge and experience"; (2) "he improperly restricted the scope of his engagement to work backwards from a conclusion and he admittedly failed to analyze or exclude alternative causes for the incident"; (3) "his conclusions are not the product of reliable principles or methodology"; and (4) "he failed to identify a reasonable alternative design of Alkar's product." Alkar's Motion at 7. Alkar also requests a Federal Rule of

---

[2] As discussed above, the court, in its May 10, 2011 Order addressing Advance Brands's Motion to Strike, ordered all but the first twenty pages of Alkar's Motion be stricken for failing to comply with the court's local rules. Consequently, the court limits its analysis to the first twenty pages of Alkar's Motion.

[3] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

3

Evidence 104(a) hearing regarding Eckhardt's qualifications, the reliability of his opinions and his methodologies. The court finds that a hearing is unnecessary. The court will determine the admissibility of Eckhardt's opinions based upon the parties' submissions and the record.

### 1. *Legal background*

Federal Rule of Evidence 702 governs the use of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. "Rule 702 was amended in 2000 in response to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and its progeny." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (citing Fed. R. Evid. 702 advisory committee's note). "*Daubert* charged trial judges with acting as gatekeepers to exclude unreliable expert testimony." *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)). Under Rule 702 and *Daubert*, district courts now have "the discretion necessary to close the courtroom door to 'junk science' and to admit reliable expert testimony that will aid the trier of fact." *Id.* (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)). In other words, "[d]istrict courts have wide latitude in determining whether an expert's testimony is reliable." *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007).

"The proponent of an expert witness bears the burden of establishing that his or her testimony is admissible by a preponderance of the evidence." *Probatter Sports, LLC v. Joyner Tech., Inc.*, No. 05-CV-2045-LRR, 2007 WL 3285799, at *4 (N.D. Iowa Oct. 18,

4

2007) (citing Fed. R. Evid. 702 advisory committee notes). "[A]ny doubts regarding the admissibility of the expert testimony should be resolved in favor of admission." *Id.* (citing *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006)). "'[T]he rejection of expert testimony is the exception rather than the rule.'" *Robinson*, 447 F.3d at 1100 (quoting Fed. R. Evid. 702 advisory committee's note). "'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 595).

### 2. *Eckhardt's qualifications*

Alkar maintains that "Eckhardt lacks the qualifications necessary to assist the trier of fact or validly offer his opinions in this case." Alkar's Motion at 12. Alkar bases this argument on the fact that Eckhardt is not an oven expert and has formed opinions about the Alkar oven. Advance Brands counters by arguing, among other things, the following:

> The operable issue in this matter is the combustibility of thermal fluid in connection with pressure vessels. The fact that the thermal fluid and pressure vessels happen to be located inside an oven has little effect on Alkar's liability. Eckhardt is a mechanical engineer who is well-versed in the manufacturing and production of thermal fluid systems and has designed and developed 'thousands of thermal fluid systems' for the food industry, which incorporate internal pressure relief. (Exhibit 1, Eckhardt Depo., at 34-35, 389; Eckhardt's C.V. attached to Exhibit 2).

Advance Brands's Resistance to Alkar's Motion at 2-3.

Alkar's argument that Eckhardt's testimony should be excluded because he is not an oven expert is significantly diminished in light of the fact that Alkar's own expert witness, R. Dean Harris, is not an oven expert. Harris, like Eckhardt, bases his analysis on his experience working with thermal fluid systems. Alkar maintains that Eckhardt's testimony should nevertheless be excluded because Eckhardt restricted his analysis to the

5

Alkar oven. The court disagrees. Like Eckhardt, Harris made many findings regarding the Alkar oven itself. Harris specifically found that "[t]he design of the Alkar oven played no role in the cause of the incident," and that the Alkar oven "could have been easily repaired." Alkar's Appendix in Support of its Motion for Summary Judgment ("Alkar Summary Judgment App'x") (docket nos. 104-1 through 104-15) at 911-12. The court fails to see how Alkar can argue that it is permissible for Harris, a non-oven expert, to make findings regarding the Alkar oven, and simultaneously argue that Eckhardt cannot make such findings because he is not an oven expert.

A witness is sufficiently qualified to testify as an expert if "'his knowledge of the subject matter is such that his opinion will most likely assist the trier of fact in arriving at the truth.'" *Williams v. Pro-Tec, Inc.*, 908 F.2d 345, 348 (8th Cir. 1990) (quoting *Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856, 857-58 (8th Cir. 1975)); *see also Reedy v. White Consol. Indus., Inc.*, 890 F. Supp. 1417, 1446-48 (N.D. Iowa 1995) (conducting a thorough analysis on the admissibility of expert witness testimony). "Once the trial court has determined 'that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than to its admissibility.'" *Reedy*, 890 F. Supp. at 1446 (quoting *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 283 (8th Cir. 1995)).

The court concludes that Eckhardt's education, experience and knowledge of the subject matter is likely to assist the jury in arriving at the truth. The cases Alkar cites are inapposite and do not require a different result. The court therefore declines to hold that Eckhardt's expert testimony is inadmissible based upon his lack of qualifications. As a result, Alkar's challenges to Eckhardt's lack of specific expertise in ovens goes the weight, and not to the admissibility, of his testimony. *See, e.g. Weisgram v. Marley Co.*, 169 F.3d 514, 524 (8th Cir. 1999) (Bright, J., dissenting) ("[E]ven if the plaintiffs' experts lacked specific expertise in heaters, this matter went to the weight and not the admissibility

of their testimony.") (citing *Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1990)).

### 3. *Alternative causes*

Alkar maintains that Eckhardt's opinions should be excluded because he failed to rule out alternative causes for the fire and restricted his analysis to the Alkar oven. Specifically, Alkar complains that Eckhardt failed to consider the thermal fluid piping system that Gleeson and Plains Boiler installed, and Advance Brands's own negligence, as potential alternative causes.

Advance Brands hired Eckhardt "to determine whether the thermal fluid and pressure vessels within the Alkar oven played a role in the explosion." Advance Brands's Resistance to Alkar's Motion at 4. Consequently, Eckhardt initially restricted his analysis to whether the Alkar oven "was defective in a manner that caused the fire/explosion." Alkar Summary Judgment App'x at 718. Later, in response to criticism from Harris and other experts, Eckhardt drafted a Rebuttal Report, in which he added the thermal fluid system to the scope of his analysis.

The court has concerns about Eckhardt's failure to consider Advance Brands's negligence as a potential alternative cause of the fire. However, "'an expert's causation conclusion should not be excluded because he or she failed to rule out *every* possible alternative cause.'" *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 693 (8th Cir. 2001) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 256 (4th Cir. 1999)) (emphasis in *Lauzon*). The consideration of alternative causes is just one of the many factors the court may consider in determining whether to admit expert testimony. *See id.* An expert's failure to rule out alternative causes generally pertains to the weight, and not the admissibility of the evidence. *See id.* at 694. The court declines to exclude Eckhardt's testimony due to his failure to examine every possible cause for the accident. Alkar may subject Eckhardt to vigorous cross-examination on this issue, and the jury will give

7

Eckhardt's testimony as much weight as the jury thinks it deserves. *See id.*; *Robinson*, 447 F.3d at 1100; *cf. Howard v. Werner Co.*, No. C03-0140, 2006 WL 5278388, at *7 (N.D. Iowa March 31, 2006) (admitting expert testimony after expert ruled out at least one other possible cause of a ladder's failure).

### 4. *Methodology*

Alkar maintains that Eckhardt's opinions are not derived from sound or scientific principles and should be excluded. Alkar relies heavily on Eckhardt's lack of experience with ovens and his failure to consider alternative causes for the fire. The court has already considered those issues above and will not do so again here. Alkar next attacks Eckhardt's reasonable alternative design and ultimate conclusion that the Alkar oven should have included internal pressure relief. The court previously addressed those issues in its Summary Judgment Order. Thus, the court concludes that Alkar fails to raise any new arguments regarding Eckhardt's methodology to support its position. In fact, in its initial brief, Alkar fails to challenge any of Eckhardt's methods. Accordingly, the court finds no basis upon which to conclude that Eckhardt's methodologies are unsound.

In its Reply brief, Alkar argues for the first time that "Eckhardt admitted that it was possible to restore the oven to the condition that it was in prior to the incident, and that he did not do an analysis to determine what could be repaired or what such repairs would cost." Alkar Reply at 2. "The inclusion of a new argument in a reply brief is improper as a matter of motion practice in this court, and, in this circuit." *Armstrong v. Am. Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 872 n.19 (N.D. Iowa 2009) (internal citations omitted) (listing cases). Furthermore, this argument blatantly misconstrues Eckhardt's testimony. It is true that Eckhardt testified that "[a]nything is possible." Alkar's Appendix in Support of Alkar's Motion ("Alkar's Motion App'x") (docket no. 122-1 through 122-6) at Exhibit C, dep. pg. 413. However, Eckhardt made clear that it was his position that the oven was not repairable:

8

> Q. What would the cost have been [to repair the Alkar oven]? Did you calculate it?
>
> A. Well, it would have been large for sure because the electrics have to be replaced. The food-grade polishes are shot in many locations because of the smoke damage. So now you either sit there and hand-polish it, assuming the piece isn't distorted, or you disassemble it, can those parts and provide new. I've been through this with process equipment. The cost of doing such a thing . . . it's not unusual that it exceeds the cost associated with starting from scratch.
>
> Q. Did you do that cost analysis in this case on an item-by-item basis with respect to the repairs to this oven?
>
> A. No, because it would have required disassembly of the oven to determine what pieces, if any, were salvageable.
>
> Q. So you did not do that analysis, correct.
>
> A. No. My . . . opinion of irreparable oven--irreparable condition is from Advance Brands'[s] perspective that they're not given unlimited time and unlimited money to bring this thing back to--an unsafe condition.

*Id.* at dep. pg. 414. Although the court need not consider this argument, *see Armstrong*, 678 F. Supp. 2d at 872 n.19, the court concludes that Eckhardt's failure to take apart the vast Alkar oven and examine it piece-by-piece does not render his analysis inadmissible.

Alkar also argues, for the first time in its Reply brief, that Eckhardt should not be able to testify about what is state-of-the-art or state-of-the-industry because "he knows nothing about the oven industry." Alkar Reply at 3. The court declines to decide this issue here, as it was raised for the first time in the Reply. *See Armstrong*, 678 F. Supp. 2d at 872 n.19. The court has already considered and dismissed Alkar's argument that Eckhardt must be an oven expert to testify about relevant issues in this case. This does not mean, however, that Eckhardt is qualified to testify about all of the issues in this case.

9

### 5. *Conclusion*

"'Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. The rule clearly is one of admissibility rather than exclusion.'" *Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) (quoting *Lauzon*, 270 F.3d at 686); *see also Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007) (same). "'The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury.'" *Polski*, 538 F.3d at 839 (quoting *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir.1997)). The court concludes that Eckhardt's testimony is not so fundamentally unsupported that it can offer no assistance to the jury. Consequently, to the extent Alkar's Motion seeks to completely exclude Eckhardt's testimony, it is **DENIED**. However, because the court will be in a better position to determine the admissibility of Eckhardt's testimony regarding specific issues as those issues arise at trial, the court **RESERVES RULING** on the remainder of Alkar's Motion.

## B. Advance Brands's Motion

Advance Brands asks the court to exclude evidence and argument regarding: (1) Advance Brands's actions in operating the Alkar oven with the isolation valves closed; (2) Advance Brands's insurance; (3) the condition and characteristics of equipment in Advance Brands's Orange City facility; (4) the testimony of Jack Auflick; (5) the testimony of R. Dean Harris, John Holecek and Sid Bhatt; and (6) the testimony of Timothy Kobernat. The court will address each of Advance Brands's arguments, in turn.

### 1. *Advance Brands's operation of the Alkar oven*

Advance Brands asks the court to exclude evidence that "Advance Brands's actions in running the oven with the isolation valves closed was a cause of the loss or that such action constitutes contributory negligence." Advance Brands's Motion at 2. Advance Brands argues that, "[b]ecause . . . Advance Brands could not foresee any hazard or

danger in running the oven with the valves closed, this action was not negligent and not a cause of the incident." *Id.* at 3.

Gleeson, Plains Boiler and Alkar resist Advance Brands's request. Gleeson argues that evidence of Advance Brands's contributory negligence must be allowed pursuant to Iowa Code section 668.1 *et seq*. Plains Boiler argues, among other things, that the issue of foreseeability is a question of fact for the jury. In its Resistance, Alkar sets forth evidence, including testimony of Advance Brands's employees, in an effort to demonstrate that the fire was foreseeable to Advance Brands.

"An actionable claim of negligence requires 'the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages.'" *Thompson v. Kaczinski*, 774 N.W.2d 829, 834 (Iowa 2009) (quoting *Stotts v. Eveleth*, 688 N.W.2d 803, 807 (Iowa 2004)). Older Iowa cases "characterized the proposition that the relationship giving rise to a duty of care must be premised on the foreseeability of harm to the injured person as 'a fundamental rule of negligence law.'" *Id.* (quoting *Sankey v. Richenberger*, 456 N.W.2d 206, 209-10 (Iowa 1990)). However, in *Thompson*, 775 N.W.2d at 834-35, the Iowa Supreme Court adopted Restatement (Third) of Torts: Physical Harm ("Third Restatement") § 7, and removed the foreseeability analysis from duty determinations. The concept of foreseeablility now has a more limited role in negligence determinations. *See id.* at 835. Under the Third Restatement, the assessment of the foreseeability of a risk must be delegated to the factfinder, and should be considered by the jury when determining whether a party failed to exercise reasonable care. *Id.*

In its Resistance to Advance Brands's Motion, Alkar discusses evidence that contradicts Advance Brands's statement that "it is an undisputed fact that Advance Brands could not foresee any hazard or danger in running the oven with the valves closed." Advance Brands's Motion at 3. The court concludes that whether it was foreseeable to

11

Advance Brands that its negligence could cause the damages at issue in this case is a question of fact for the jury. Even Advance Brands recognizes "that whether Advance Brands's actions were causative of this event is a factual issue that must be resolved by a jury." Advance Brands's Resistance to Alkar's Motion at 7. Consequently, Advance Brands's Motion is **DENIED** to the extent that it seeks to exclude evidence of its own allegedly negligent conduct leading up to the fire and explosion.

### 2. *Advance Brands's insurance*

Advance Brands asks the court to exclude evidence that it "was insured at the time of the incident at issue in this case." Advance Brands's Motion at 5. Alkar and Plains Boiler both resist. Alkar argues that, because Advance Brands and Gleeson have the same insurance company, Traveler's Insurance, Advance Brands intentionally avoided suing Gleeson. Alkar opines that Advance Brands is now attempting to hold Alkar liable for defects with the thermal fluid system that Gleeson supplied. Thus, Alkar maintains that it should be able to submit evidence regarding the dual role of the insurance company "to show the biased approach pursued by [Advance Brands] and its purported experts, . . . and to address why [Advance Brands] has attempted to conflate the thermal fluid piping system supplied by Gleeson with the oven supplied by Alkar without ever filing suit against Gleeson." Alkar's Resistance to Advance Brands's Motion at 6.

Under Iowa's collateral source rule, "'a plaintiff's recovery of damages against a tort defendant are not reduced by sums the plaintiff has received or will receive from another source (a collateral source).'" *Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 828 (Iowa 1998) (quoting *Collins v. King*, 545 N.W.2d 310, 311 (Iowa 1996)). Additionally, pursuant to Federal Rule of Evidence 411,

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency,

ownership, or control, or bias or prejudice of a witness.

Thus, the amount of insurance money Traveler's paid Advance Brands after the accident is irrelevant under the collateral source rule. Furthermore, pursuant to Rule 411, Alkar cannot produce evidence of Advance Brands's shared insurance with Gleeson in order to show that either Advance Brands or Gleeson acted negligently. However, evidence that Advance Brands and Gleeson shared the same insurance company might be relevant for other purposes, such as to demonstrate the potential bias of Advance Brands's expert witnesses. *See, e.g., Charter v. Chleborad*, 551 F.2d 246, 248-49 (8th Cir. 1977) (admitting evidence of insurance to show bias of defense witness); *Dicks v. Cleaver*, 433 F.2d 248, 254-55 (5th Cir. 1970) (discussing admissibility of the dual role of an insurance company in an action).

The court concludes that it will be in a better position to address this issue at trial when it will be more apparent whether a party is attempting to use evidence of Advance Brands's and Gleeson's shared insurance for a permissible purpose. Accordingly, the court **RESERVES RULING** on this portion of Advance Brands's Motion.

### 3. *Advance Brands's other equipment*

Advance Brands seeks to exclude evidence regarding the characteristics of other equipment within the Orange City facility. Advance Brands maintains that such evidence is irrelevant and any probative value is substantially outweighed by the danger of unfair prejudice. Gleeson, Plains Boiler and Alkar each resist Advance Brands's request.

Advance Brands alleges that the Alkar oven was defectively designed because it lacked internal pressure relief. There is evidence in the record that none of the ovens in Advance Brands's facility—including the Stein oven Advance Brands purchased to replace the Alkar oven—included internal pressure relief. Consequently, the characteristics of the other equipment in Advance Brands's facility is directly relevant to whether the Alkar oven was designed defectively.

Pursuant to Iowa Code section 668.12,

> In any action brought pursuant to this chapter against an assembler, designer, supplier of specifications, distributor, manufacturer, or seller for damages arising from an alleged defect in the design, testing, manufacturing, formulation, packaging, warning, or labeling of a product, a percentage of fault shall not be assigned to such persons if they plead and prove that the product conformed to the state of the art in existence at the time the product was designed, tested, manufactured, formulated, packaged, provided with a warning, or labeled.

Under this statute, the fact that a product conforms to the state-of-the-art in existence at the time the product was designed is a complete defense to a design defect claim. *See, e.g., Mercer v. Pittway Corp.*, 616 N.W.2d 602, 622 (Iowa 2000). Although not determinative, the "custom in the industry" is relevant to the state of the art inquiry. *See id.*

The court concludes that evidence that none of the other equipment in Advance Brands's facility contained internal pressure relief is directly relevant to whether the Alkar oven was defective, whether the Alkar oven conformed to the state-of-the-art and whether the incident could have been avoided through the adoption of a reasonable alternative design. Such evidence is not overly prejudicial. The court therefore **DENIES** Advance Brands's Motion to the extent that it seeks to exclude evidence of the characteristics of the equipment in its facility.

### 4. *Jack Auflick's testimony*

Advance Brands asks the court to exclude the testimony of Alkar's human factors expert, Jack Auflick. Specifically, Advance Brands argues that Auflick's analysis regarding foreseeability is based upon an incorrect legal standard. Plains Boiler, Gleeson and Alkar resist Advance Brands's request, but fail to cite any authority for their respective positions.

Much of Auflick's expert report addresses whether Advance Brands's actions were foreseeable to Alkar. Auflick opines, "There were several sequential human errors in this accident scenario done by the Advance Brands'[s] maintenance technician and operator that made this chain of events very improbable and therefore not foreseeable." Alkar's Summary Judgment App'x at 1029. Auflick states that Advance Brands's "mechanical technician and oven operator failed to follow the Advance Brands general and machine-specific LOTO procedures by:

1. Maintenance not locking out the electrical panels for the oven in the mezzanine;

2. Operator not locking out valves and panels in the mezzanine (group LOTO);

3. Maintenance not restoring the closed valves to operational status before removing his lock from the control panel;

4. Maintenance not advising personnel on the next shift that the valves in the mezzanine were still closed and locked out;

5. Maintenance not restoring the valves to operational status when he returned to work on Monday;

6. Operator not shutting oven down during start up when operator knew valves were locked out;

7. Maintenance failing to restore both valves on first attempt.

*Id.* Auflick then conducts a technical mathematical calculation to determine the probability that each of these errors would take place and concludes that "the chain of human errors that caused this event was a very rare occurrence and was not foreseeable." *Id.* at 1028. However, "mathematical probability is not the ultimate test of foreseeability, duty or negligence." *Allen v. United States*, 588 F. Supp. 247, 356 (D. Utah 1984), *rev'd on other grounds by Allen v. United States*, 816 F.2d 1417 (10th Cir. 1987).

Under Iowa law, [w]hen the failure of a product occurs only as a result of the product being used in a manner other than that intended by the seller, and if that unintended use is not reasonably foreseeable by the seller, the product is not in a defective condition." *Henkel v. R & S Bottling Co.*, 323 N.W.2d 185, 192 (Iowa 1982). However, "when the seller reasonably foresees the misuse, the product is in a defective condition despite the misuse." *Id.*

> In determining whether or not the seller should have reasonably anticipated the use of the product, the factfinder may take into account: the reasonable use or uses of the product; the ordinary user's awareness that the use of the product in a certain way is dangerous; the likelihood and probable nature of use of the product by persons of limited knowledge; and the normal environment for the use of the product and the foreseeable risk in such environment, as well as any other evidence that may or may not cause the seller to reasonably anticipate such use.

*Id.*; *see also* Restatement (Third) of Torts: Products Liability § 2 cmt. p (1998) (noting that "liability for defective design attaches only if the risks of harm related to foreseeable product use could have been reduced by the adoption of a reasonable alternative design").

It is generally held that "the precise chain of events leading up to the accident need not be foreseen." *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 905-06 (2d Cir. 1991). Instead, "'foreseeability includes the probability of the occurrence of a general type of risk involving the loss[.]'" *Id.* (quoting *Tucci v. Bossert*, 385 N.Y.S.2d 328, 331 (N.Y. 1976)); *see also Suchomajcz v. Hummel Chemical Co., Newark, New Jersey*, 524 F.2d 19, 28 n.8 (3d Cir. 1975) ("The concept of foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury.").

The court concludes that Auflick's expert report improperly characterizes what Alkar must have foreseen in order for Advance Brands's misuse of the Alkar oven to be

considered "foreseeable misuse." Alkar did not need to foresee the exact sequence of events Auflick set out in his report. Consequently, to the extent that Advance Brands asks the court to prohibit Alkar, Gleeson or Plains Boiler from presenting evidence that Advance Brands's alleged misuse of the Alkar oven was not foreseeable unless Alkar could have foreseen the exact sequence of events that preceded the accident, Advance Brands's Motion is **GRANTED**. However, Advance Brands's request to exclude Auflick's testimony for all purposes is **DENIED**. The court notes that its holding does not preclude Alkar, Gleeson or Plains Boiler from submitting evidence of Advance Brands's purported negligent conduct.

### 5. *R. Dean Harris, John Holecek, and Sid Bhatt's testimony*

Advance Brands asks the court to exclude the expert testimony of Harris, John Holecek and Sid Bhatt regarding whether Advance Brands caused the fire and explosion when it used the Alkar oven with the isolation valves closed. As discussed above, whether Advance Brands's conduct constitutes contributory negligence is a question of fact for the jury. Consequently, to the extent Advance Brands seeks to exclude the testimony of these three witnesses, Advance Brands's Motion is **DENIED**.

### 6. *Timothy Kobernat's testimony*

Advance Brands requests that the court exclude the testimony of Alkar's expert, Timothy Kobernat, because his testimony fails to meet the requirements of Federal Rule of Evidence 702, would mislead the jury and would cause unfair prejudice under Federal Rule of Evidence 403. Specifically, Advance Brands maintains that Kobernat admitted in his deposition that he did not know what caused the fire, and therefore, his statements that Advance Brands committed several OSHA violations "is irrelevant because Kobernat cannot determine whether the alleged errors actually had anything to do with the fire." Advance Brands's Motion at 13. However, Advance Brands has not provided the court with the pages of the deposition in which it claims that Kobernat stated he did not know

what caused the fire. Gleeson, Plains Boiler and Alkar resist Advance Brands's request.

Pursuant to Federal Rule of Civil Procedure 702,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"'The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury.'" *Polski*, 538 F.3d at 839 (quoting *Wood*, 112 F.3d at 309). Having reviewed the record, including Kobernat's report, the court finds no basis upon which to conclude that Kobernat's opinion is fundamentally unsupported under Rule 702.

As discussed above, an important issue in this case is whether the Alkar oven was defective. If Advance Brands misused the Alkar oven when it violated OSHA and its lock out/tag out procedures, such evidence is relevant to a determination of whether Advance Brands's misuse of the Alkar oven in such a manner was foreseeable to Alkar. *See, e.g., Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 530 (Iowa 1999) (discussing foreseeable misuse); *Henkel*, 323 N.W.2d at 192 (same). The court concludes that Kobernat's testimony should not be excluded as irrelevant, confusing or prejudicial. Consequently, Advance Brands's Motion is **DENIED** to the extent that it seeks to exclude Kobernat's testimony.

## IV. CONCLUSION

For the foregoing reasons, to the extent Alkar's Motion (docket no. 122) has not already been stricken, it is **DENIED IN PART** and the court **RESERVES RULING IN PART**. Advance Brands's Motion (docket no. 120) is **DENIED IN PART**, **GRANTED**

**IN PART** and the court **RESERVES RULING IN PART**.  The parties must not directly or indirectly refer to or elicit answers from witnesses on the prohibited subjects.  Each party is charged with the responsibility of cautioning its witnesses as to the substance of this Order.

    **IT IS SO ORDERED.**

    **DATED** this 31st day of May, 2011.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA