# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ADVANCE BRANDS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>ALKAR-RAPIDPAK, INC.,<br><br>    Defendant and Third-Party Plaintiff,<br><br>vs.<br><br>GLEESON CONSTRUCTORS & ENGINEERS, LLC and PLAINS BOILER SERVICE, INC.,<br><br>    Third-Party Defendants. | No. 08-CV-4057-LRR<br><br>**ORDER** |

_____

## TABLE OF CONTENTS

*I.*    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   **RELEVANT PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  **ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

     *A.*    *Plains Boiler's Motion* . . . . . . . . . . . . . . . . . . . . . . . *2*
           *1.*    *Criticisms of Plains Boiler's work* . . . . . . . . . . . . . . . . *3*
           *2.*    *Bartley Eckhardt's Rebuttal Report* . . . . . . . . . . . . . . . . *5*
           *3.*    *Damages* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
                *a.*    *Implied warranty claims* . . . . . . . . . . . . . . . . . . *8*
                *b.*    *Economic loss doctrine* . . . . . . . . . . . . . . . . . . *9*
     *B.*    *Gleeson's Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
           *1.*    *Bartley Eckhardt's Rebuttal Report* . . . . . . . . . . . . . . . *11*
           *2.*    *Insurance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
           *3.*    *Testimony of R. Dean Harris* . . . . . . . . . . . . . . . . . . *12*
                *a.*    *Negligence per se* . . . . . . . . . . . . . . . . . . . . *12*
                *b.*    *Criticisms of Gleeson's work* . . . . . . . . . . . . . . *12*

*IV.    CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## I.  INTRODUCTION

The matters before the court are: (1) Third-Party Defendant Plains Boiler Service, Inc.'s ("Plains Boiler") Motion in Limine ("Plains Boiler's Motion") (docket no. 119); and (2) Third-Party Defendant Gleeson Constructors & Engineers, LLC's ("Gleeson") Motion in Limine ("Gleeson's Motion") (docket no. 121).[1]

## II. RELEVANT PROCEDURAL HISTORY

On May 5, 2011, the parties filed the Motions. On May 12, 2011, Plaintiff Advance Brands, LLC ("Advance Brands") filed a Resistance (docket no. 132) to Plains Boiler's Motion and a Resistance (docket no. 133) to Gleeson's Motion. On that same date, Defendant/Third-Party Plaintiff Alkar-Rapidpak, Inc. ("Alkar") filed a Resistance (docket no. 135) to Plains Boiler's Motion and a Resistance (docket no. 136) to Gleeson's Motion. On May 16, 2011, Plains Boiler filed a Reply (docket no. 143) to Advance Brands's and Alkar's Resistances.

On May 19, 2011, the court held a Final Pretrial Conference ("Hearing"). Jeff Wright, Robert Cockerham, Matthew Lefler and Samuel Vincent III appeared for Advance Brands. John Mayne, Phillip Shawn Wood and Justin Beyer appeared for Alkar. Daniel Shuck appeared for Gleeson. Michael Frey appeared for Plains Boiler. At the Hearing, the parties discussed the Motions, and the court reserved ruling.

## III.  ANALYSIS

The court first addresses Plains Boiler's Motion and next addresses Gleeson's Motion.

### A.  *Plains Boiler's Motion*

Plains Boiler asks the court to enter an order precluding Advance Brands and Alkar

---

[1] The court refers to the parties' Motions in Limine collectively as "the Motions."

from introducing any argument, statement or evidence regarding: (1) "[e]vidence Plains [Boiler] negligently performed any duty owed relative to its repair of a thermal fluid leak inside of the Alkar oven on [September 15, 2007] or is [causally] related to the subsequent fire on [September 17, 2007]"; (2) whether Plains Boiler "had a duty to provide its own 'lock-out & tag out' procedures in performing its service call work on [September 15, 2007] or had any duty to inspect Advance Brands'[s] . . . procedures"; (3) opinions from "Alkar or Advance Brands'[s] experts [that are] critical of [Plains Boiler's] work on [the expansion] project, unless [they are causally] connected to the over-pressurization of the Alkar oven"; (4) Bartley Eckhardt's February 22, 2011 Rebuttal Report; (5) "[a]ny reference to the wealth or poverty of any party in this litigation"; (6) the "Golden Rule Argument"; (7) "[a]ny reference to Plains Boiler having insurance coverage for this litigation"; (8) "[e]vidence of prior or similar incidents or litigation"; (9) "[e]vidence that the State of Iowa has adopted the ASME Code or NFPA 86 Relative to [Plains Boiler's] scope of work"; and (10) any claim that Plains Boiler is responsible for any purely economic loss Advance Brands suffered as a result of the fire. Plains Boiler's Brief in Support of Plains Boiler's Motion ("Plains Boiler's Br.") (docket no. 119-1) at 2-12.

No party has resisted Plains Boiler's Motion regarding issues one, two, five, six, seven, eight and nine. Accordingly, Plains Boiler's Motion is **GRANTED** insofar as it seeks to bar Advance Brands and Alkar from presenting evidence or argument regarding those issues. The court addresses the remaining issues in turn.

### 1. *Criticisms of Plains Boiler's work*

Plains Boiler asks the court to exclude "evidence or testimony of Alkar or Advance Brands'[s] experts critical of [Plains Boiler's] work on [Advance Brands's expansion] project, unless it is [causally] connected to the over-pressurization of the Alkar oven." Plains Boiler's Br. at 4. Alkar's expert, R. Dean Harris, testified that Plains Boiler and Gleeson failed to properly design the thermal fluid piping system at Advance Brands's

3

Orange City facility by failing to consider "pressure drop calculations, thermal expansion calculations, the locations of pipe hangers, pipe movement, crushed lines and the deficiencies noted in the Fulton inspection report." *Id.* at 4. Plains Boiler maintains that "[t]his type of testimony should be excluded from evidence in this case because it is not relevant." *Id.* Specifically, Plains Boiler asks the court to "exclude the following evidence in connection with any argument or insinuation that this evidence is [causally] connected to the September 17, 2007 fire at Advance Brands":

    a.    [the] Fulton inspection report [which] indicates [that] whoever installed the piping system had no idea how to install a thermal fluid piping system;

    b.    [evidence regarding] [w]hether proper thermal fluid expansion or drop calculations for thermal fluid piping were done prior to installation;

    c.    [evidence that] [t]he initial installation of pipe hangers, crushed piping lines, the wrong bolts, leaking pipes or flanges, insulation of pipes and valves having wrong temperature rating had to be [remedied] after Fulton's inspection[; and]

    d.    [evidence regarding] [w]hether engineer stamped thermal fluid design drawings were done in this case.

*Id.* at 5-6. Plains Boiler maintains that this evidence is irrelevant because many of the alleged problems were resolved long before the fire and there is no evidence that these alleged defects caused the fire and resulting damages.

Alkar resists Plains Boiler's request, arguing that this evidence is relevant to show Plains Boiler's negligence. However, Alkar has not argued that the evidence Plains Boiler seeks to exclude is causally linked to the fire. Absent evidence that Plains Boiler's alleged mistakes are causally connected to the fire, such mistakes are irrelevant. *See Thompson v. Kaczinski*, 774 N.W.2d 829, 834 (Iowa 2009) ("An actionable claim of negligence requires 'the existence of a duty to conform to a standard of conduct to protect others, a

failure to conform to that standard, proximate cause, and damages.'" (quoting *Stotts v. Eveleth*, 688 N.W.2d 803, 807 (Iowa 2004))); Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Consequently, Plains Boiler's Motion is **GRANTED** to the extent that it seeks to exclude evidence that is critical of Plains Boiler's work. If Alkar can demonstrate Plains Boiler's alleged mistakes have a causal connection to the fire it may make a preliminary showing to the court outside the presence of they jury and seek admission of such evidence.

### 2. *Bartley Eckhardt's Rebuttal Report*

Plains Boiler argues that Eckhardt, Advance Brands's expert, formed a new opinion in his Rebuttal Report that was not timely disclosed under Federal Rule of Civil Procedure 26(a)(2). Consequently, Plains Boiler asks the court to exclude any evidence of this new opinion, including "any evidence or testimony from Advance Brands'[s] expert witness [Eckhardt] regarding whether the actions/inactions of Plains [Boiler] were a [cause] of or contributed to the incident." Plains Boiler's Br. at 9. Alkar and Advance Brands resist.

Pursuant to Rule 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."

> Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specifically employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;

>       (iii)   any exhibits that will be used to summarize or support them;
>
>       (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
>       (v)     a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
>       (vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Expert testimony can also be presented in the form of a rebuttal report "to contradict or rebut evidence on the same subject identified by another party under Rule 26(a)(2)(B)[.]" Fed. R. Civ. P. 26(a)(2)(D)(ii).

Advance Brands properly disclosed that it employed Eckhardt as an expert and provided the parties with a copy of his written report in accord with Rule 26(a)(2)(A) and (B). Subsequently, on February 22, 2011, Eckhardt issued a Rebuttal Report. Plains Boiler takes issue with the Rebuttal Report, claiming that it does not constitute proper rebuttal under Rule 26(a)(2)(D)(ii). The court disagrees. Eckhardt's Rebuttal Report, which addressed the design and installation of the thermal fluid piping system, was drafted "to contradict or rebut evidence on the same subject identified by another party under Rule 26(a)(2)(B)." Consequently, Eckhardt's opinions set forth in the Rebuttal Report are therefore admissible.[2]

Alternatively, the court holds that, even if the opinions in Eckhardt's Rebuttal Report do not constitute proper rebuttal under Rule 26(a)(2)(D)(ii), admission of the opinions would be harmless. Pursuant to Rule 37(c)(1),

> If a party fails to provide information or identify a witness as

---

[2] Because Plains Boiler does not argue that Eckhardt failed to submit his Rebuttal Report "within 30 days after the other party's disclosure," as required under Rule 26(a)(2)(D)(ii), the court need not consider this issue.

> required by Rule 26(a) or (e), the party is not allowed to use
> that information or witness to supply evidence on a motion, at
> a hearing, or at a trial, unless the failure was substantially
> justified or is harmless.

The district court has the discretion to determine whether the late filing of discovery materials was harmless. *See Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008-09 (8th Cir. 1998); *Johnson v. University of Iowa*, 408 F. Supp. 2d 728, 736 (S.D. Iowa 2004); *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). In determining whether the late filing of discovery materials was harmless, the court should consider, among other things, "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692.

Considering each of these factors, the court notes that Eckhardt did not initially issue opinions regarding Gleeson and Plains Boiler's design and installation of Advance Brands's thermal fluid piping system because, at the time of his initial Engineer's Report, Plains Boiler and Gleeson were not yet parties to the action. The admission of the opinions in Eckhardt's Rebuttal Report will not surprise or prejudice Plains Boiler because Alkar's experts have presented arguments nearly identical to Eckhardt's. Plains Boiler has had ample opportunity to formulate a defense to these arguments and cannot successfully argue that it will be surprised by the issues Eckhardt raises in his Rebuttal Report. Admitting the information contained in the Rebuttal Report will not disrupt the order and efficiency of the trial, and the information contained in the Rebuttal Report is relatively important to Advance Brands's case.

Plains Boiler asserts that it will be prejudiced by the admission of the opinions in the Rebuttal Report because Eckhardt filed it only six days before the close of discovery and Plains Boiler will not have an opportunity to challenge his opinions. However, Eckhardt drafted the Rebuttal Report to respond to the other experts involved in the case,

including Alkar's expert R. Dean Harris, who was deposed only one week before Eckhardt submitted his Rebuttal Report. Plains Boiler will have an adequate opportunity to challenge Eckhardt's opinions during cross-examination. Therefore, the court holds that, even if the opinions in Eckhardt's Rebuttal Report constitute the late submission of expert testimony under Rule 26(a)(2), they are admissible because they are harmless under Rule 37(c)(1). Accordingly, Plains Boiler's Motion is **DENIED** to the extent that it seeks to exclude Eckhardt's opinions in the Rebuttal Report.

### 3. *Damages*

#### a. *Implied warranty claims*

"Under Iowa law a warranty that goods sold are merchantable is implied in a contract for their sale." *Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 108 (Iowa 1995). "Additionally, if the seller has reason to know at the time of contracting that the buyer is purchasing the goods for a particular purpose and that the buyer is relying on the seller's skill and judgment to furnish suitable goods, there arises a warranty that the goods shall be fit for that purpose." *Id*.

"While [the Iowa Supreme Court] has held that a nonprivity purchaser may recover 'direct economic loss' for breaches of implied warranties under the U.C.C., [it has] repeatedly held that a remote purchaser of goods cannot recover 'consequential economic loss' from a vendor under an equitable indemnity theory." *Wells Dairy, Inc. v. Am. Indus. Refrig., Inc.*, 762 N.W.2d 463, 476 (Iowa 2009); *see also Tomka*, 528 N.W.2d at 108 ("We have never allowed recovery for solely consequential economic losses under these implied warranty theories by one not in privity with the defendant."). "Direct economic loss is the difference between the value of goods as warranted and the value of goods actually delivered, while consequential economic losses includes all losses caused by the defective product." *Wells Dairy*, 762 N.W.2d at 476.

Plains Boiler seeks to exclude evidence of economic damages arising under Advance

8

Brands's implied warranty claims because Plains Boiler is not in privity with Advance Brands. Advance Brands resists. It is unclear exactly what evidence Plains Boiler seeks to exclude in light of the fact that Advance Brands has not sued Plains Boiler, but instead brought its implied warranty claims against Alkar. However, the court will decide the issue because Alkar sued Plains Boiler and Gleeson seeking contribution on Advance Brands's claims. The court concludes that because Plains Boiler and Advance Brands are not in privity, Advance Brands may not produce evidence against Plains Boiler regarding the consequential economic losses Advance Brands incurred under its breach of warranty claims. Advance Brands may, however, produce evidence of its direct economic losses under its warranty claims. Consequently, Plains Boiler's Motion is **GRANTED** to the extent that it seeks to prohibit Advance Brands from presenting evidence against Plains Boiler regarding Advance Brands's consequential economic damages arising from the implied warranty claims. Plains Boiler's Motion is **DENIED** insofar as it seeks to exclude all evidence of Advance Brands's economic losses arising from its implied warranty claims.

### b. *Economic loss doctrine*

Plains Boiler seeks to prohibit Advance Brands from presenting any argument that Plains Boiler should be liable for any purely economic loss Advance Brands incurred as a result of the fire. Advance Brands resists.

The economic loss doctrine "is a generally recognized principle of law that plaintiffs cannot recover in tort when they have suffered only economic harm.'" *Richards v. Midland Brick Sales Co., Inc.*, 551 N.W.2d 649, 650 (Iowa Ct. App. 1996). Iowa courts "have consistently found the proper remedy is in contract, not in tort, in actions where the only damage was a loss of the benefit of the bargain or was to the product itself." *Rozeboom Dairy, Inc. v. Valley Dairy Farm Automation, Inc.*, No. 09-1447, 2011 WL 662338, at *6 (Iowa Ct. App. Feb. 23, 2011) (Table). In contrast, Iowa courts "have

consistently allowed recovery in tort where the product was dangerous to the user and caused injuries extending to property other than the product itself." *Id*.

"[T]he line to be drawn is one between tort and contract rather than between physical harm and economic loss." *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 125 (Iowa 1988). When damage is "the foreseeable result from a failure of the product to work properly because of a defect or omission from the product . . . . the remedy lies in contract." *Id*. "Tort theory, on the other hand, is generally appropriate when the harm is the sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect." *Id*.

> "[T]he line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim."

*Determan v. Johnson*, 613 N.W.2d 259, 262 (Iowa 2000) (quoting *Nelson*, 426 N.W.2d at 124-25).

The Iowa Supreme Court has described a truck starting itself on fire due to a product defect as a "sudden and highly dangerous occurrence," allowing recovery in tort. *Am. Fire and Cas. Co. v. Ford Motor Co.*, 588 N.W.2d 437, 440 (Iowa 1999) (quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1174 (3d Cir. 1981), *overruled on other grounds by Aloe Co. v. Clark Equip. Co.*, 816 F.2d 110 (3d Cir. 1987)). In this case, the Advance Brands's damages resulted from a fire and explosion that Advance Brands alleges was caused by a defect in the Alkar oven. Considering the relevant factors, including the nature of the defect, the type of risk, and the manner in which the injury arose, the court concludes that Advance Brands has appropriately raised

claims for damages under a products liability theory of tort law. *See Ballard v. Amana Soc., Inc.*, 526 N.W.2d 558, 562 (Iowa 1995) (noting that a district court may properly present both tort theories and breach of warranty cases to a jury in a proper case). Consequently, Plains Boiler's Motion is **DENIED** to the extent it seeks to exclude Advance Brands's tort claims for economic damages.

### B. Gleeson's Motion

Gleeson asks the court to exclude Eckhardt's Rebuttal Report, to prohibit any references to insurance and to limit the testimony of R. Dean Harris. Gleeson requests oral argument. The court finds oral argument is unnecessary.

#### 1. *Bartley Eckhardt's Rebuttal Report*

Gleeson asks the court to exclude the opinions in Eckhardt's Rebuttal Report because they do not rebut or attempt to disprove evidence of an adverse party, but instead adopt the opinions of Alkar's expert, R. Dean Harris. Advance Brands and Alkar resist.

Harris found that Eckhardt's failure to consider the thermal fluid system in his investigation would likely produce biased and false results. To rebut Harris's claim that his investigation was flawed, Eckhardt opined on the thermal fluid piping system and its role in the subject fire in the Rebuttal Report. Although Eckhardt agreed with several of Harris's opinions regarding the thermal fluid piping system, Eckhardt did not "merely adopt[] the testimony of Alkar's expert[.]" Gleeson's Brief in Support of Gleeson's Motion (docket no. 121-4) at 2. Thus, the court concludes that the opinions in the Rebuttal Report constitute proper rebuttal under Rule 26(a)(2)(D)(ii). Furthermore, as discussed above, even if Eckhardt's Rebuttal Report is not proper rebuttal, the admission of the opinions therein are harmless under Rule 37(c)(1). Accordingly, Gleeson's Motion is **DENIED** to the extent that it seeks to exclude Eckhardt's opinions in his Rebuttal Report.

#### 2. *Insurance*

Gleeson asks the court to exclude evidence that it was covered by liability insurance

at the time of the incident at issue in this case. Alkar resists and argues that, because Advance Brands and Gleeson have the same insurance company, Advance Brands intentionally avoided suing Gleeson. Alkar opines that Advance Brands is now attempting to hold Alkar liable for defects with the thermal fluid system that Gleeson supplied. Thus, Alkar maintains that it should be able to submit evidence regarding the dual role of the insurance company "to show the biased approach pursued by [Advance Brands] and its purported experts, . . . and to address why [Advance Brands] has attempted to conflate the thermal fluid piping system supplied by Gleeson with the oven supplied by Alkar without ever filing suit against Gleeson." Alkar's Resistance to Gleeson's Motion at 4. The court addressed this issue in its Order (docket no. 150) on Advance Brands's and Alkar's Motions in Limine. For the reasons stated in the Order, the court **RESERVES RULING** on this portion of Gleeson's Motion.

    3.    *Testimony of R. Dean Harris*

        a.    *Negligence per se*

Gleeson seeks to exclude Harris's testimony that its alleged violations of the National Fire Protection Association ("NFPA") Code and the American Society of Mechanical Engineers ("ASME") Code constitute evidence of negligence per se. Alkar maintains that it does not intend to solicit testimony from Harris on this issue. Consequently, this portion of Gleeson's Motion is **DENIED AS MOOT**.

        b.    *Criticisms of Gleeson's work*

Gleeson asks the court to exclude Harris's testimony regarding his criticisms of Gleesons "design and build" of Advance Brands's thermal fluid piping system. Gleeson's Br. at 5. Gleeson argues that Harris has referred to numerous errors that it allegedly made during the design and build of the thermal fluid system, but that many of the alleged errors were fixed before the incident and Alkar has not demonstrated that any of the alleged errors caused the fire and explosion.

The alleged errors Gleeson seeks to exclude essentially mirror the alleged errors Plains Boiler seeks to exclude in Plains Boiler's Motion. Such errors include: (1) the "[f]ailure to perform pressure drop calculations"; (2) the "[f]ailure to perform thermal expansion calculations"; (3) the "[f]ailure to perform thermal pressure relief calculations"; and (4) the "[f]ailure to properly design the pipe hangers." Gleeson's Motion at 4. Alkar resists Gleeson's Motion, arguing, as it did in its Resistance to Plains Boiler's Motion, that such evidence is relevant to show Gleeson's negligence. However, Alkar has failed to present any argument that the evidence Gleeson seeks to exclude has any causal connection to the fire. Absent evidence that Gleeson's alleged mistakes are causally connected to the fire, such mistakes are irrelevant. *See Thompson*, 774 N.W.2d at 834 ("An actionable claim of negligence requires 'the existence of a duty to conform to a standard of conduct to protect others, a failure to conform to that standard, proximate cause, and damages.'" (quoting *Stotts*, 688 N.W.2d at 807)); Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Consequently, Gleeson's Motion is **GRANTED** to the extent it seeks to exclude evidence that is critical of Gleeson's work. If Alkar can demonstrate Gleeson's alleged mistakes have a causal connection to the fire it may make a preliminary showing to the court outside the presence of the jury and seek admission of such evidence.

## VIII. CONCLUSION

For the foregoing reasons, Plains Boiler's Motion (docket no. 119) is **DENIED IN PART** and **GRANTED IN PART**. Gleeson's Motion (docket no. 121) is **DENIED IN PART**, **GRANTED IN PART** and **RESERVED IN PART**. The parties must not directly or indirectly refer to or elicit answers from witnesses on the prohibited subjects. Each party is charged with the responsibility of cautioning its witnesses as to the substance of this Order.

**IT IS SO ORDERED.**

**DATED** this 8th day of June, 2011.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA